*Court of Common Pleas, Dauphin County, March 11th, 1857.*

### FISHER *v.* THE HARRISBURG GAS COMPANY.

No contract can be made by the directors of a company, unless all be present or be notified to attend, or it is done at a regular meeting of the board. Where the board of directors is fixed at a certain number, there must be a majority of that number present in order to constitute a quorum, even if the board is not full at the time. A director, if he is present, but keeps silent and takes no part in what is being done, does not bind the company. When no agency is proved, the president of a corporation has no power to bind it by his contracts. When an agent agrees to do a piece of work for a certain sum, and after its performance the principal promises to pay him more, this is void for want of a consideration.

BY THE COURT.—Several reasons which have been assigned for a new trial will receive but a passing notice. The court did

[Fisher v. The Harrisburg Gas Company.]

not refuse to admit evidence on the *quantum meruit*, but merely suggested the propriety of not offering it, as there was not the slightest probability that any jury would allow more than had already been paid, unless the same was due on a special contract.

The court instructed the jury in substance, that where a meeting of the directors took place in the manner those gentlemen came together, as stated by Mr. McCormick, it matters not where they met, whether at the office of the company or elsewhere, if on previous notice or without it, or for what purpose they met, a majority of the whole board could make a contract binding on the company; that such a contract made by two of the three present was not binding, as that would not be a majority of the whole board. Mr. Calder, by his silence, could be presumed to have assented, provided he knew of the existence of the former contract, its character, and the change proposed; but if he knew nothing of it, had never heard of the bargain, or knew that he was consenting to the change of one previously made by resolution, his act or silence was not binding on the company; to make it so he must know what he was bargaining about, that a contract had been previously made which he was changing, and if the jury believed he was entirely ignorant on that subject, his silence or acquiescence did not bind the company or stockholders whose interest he represented. Was this instruction erroneous? If it was, it is our duty to grant a new trial.

The charter of incorporation does not declare what number of directors shall form a quorum, nor when, how, where, or on what notice they shall meet for the transaction of business. It is also said that the company has no by-laws. We are then left solely to the guidance of the common law. The 6th section of the act of incorporation says, that a plurality of the stockholders present or represented may elect "a president and five directors, of whom the president shall be one, and other officers and agents," etc. Again, the 8th section declares that the stockholders shall, on the first Monday in November of each year thereafter, "elect a president and five directors," etc. By the terms of the act, taking both these sections into consideration, it is very clear that the board must consist of the president and *five* directors, and as by the 6th section the president is made one of the directors or given the power of a director, it requires four to constitute a quorum, this when the board is full. From the evidence it seems that when the transactions in question took place, there were but four directors and a president; consequently these formed no quorum for the transaction of business. Ever since the decision of Grundy v. Barker (1 Bos. & Pul. 229), it has been considered a settled principle that where a number of persons are intrusted with powers not of mere private confidence, but in some respects of a general nature or public character, and all of them are *regularly assem-*

*bled,* the majority will conclude the minority, and the act will be the act of the whole; in the case of corporations it is not necessary that the whole number should meet, it is enough if notice be given, and a majority come together, and when thus met a majority of those present can decide.   If all be *summoned,* and part appear, the major part of those who appear can do the corporate act (2 Atk. 212).   When legally assembled, the majority of voices govern; but a majority of each integral part must be present when the corporation is composed of parts (7 S. & R. 561).   There must in every case be a majority of the directors present to constitute a board, unless otherwise provided in the charter; where that is silent, it is left to the common law, which is never satisfied with less than a majority (7 Cowen, 409; Angell, s. 291). Where due notice is given of the time and place of meeting, the act of a majority of directors must govern (Angell, s. 488, 489).

Grant, in his work on corporations (page *68), lays down the general principle that where a majority is duly assembled, their acts bind the minority, but such majority must meet for the purpose; such will must, in all cases, be collected at a *corporate assembly duly constituted* (page *69).   Where *all* the members of a corporation have met together, it matters little how the acts of a majority govern in ordinary business (*70).   But if any one is absent who has a right to be present, the acts are not valid, unless he was notified (Angell, s. 495; 8 East, 543).   Notice to the corporators is strictly required, unless the meeting is on a regular day and at the usual place (5 Barr, 268).   If less than the whole have assembled, and those absent have not been notified, no corporate act can be done (8 East, 545).   And if the corporators have been summoned to meet for one purpose, and part only are present, they cannot lawfully transact other business. The acts of a majority present by *accident* would not be binding on the corporation (Idem, 546).

To apply these principles to the case under consideration.   The meeting of the president and two directors was called informally; not to *do* a corporate act, but to give sanction to the action of the company's counsel in compromising the controversy then on trial.   No notice of such intended meeting was given.   On the contrary, Mr. Berghaus was intentionally left out, as the parties feared that he was in the interest of their adversaries; and when they had started a messenger to notify him he was recalled.   The meeting was not only without notice, but at an unusual place,— the office of Mr. McCormick.   The directors had assembled for the purpose of compromising a controversy, not to make a new contract with the counsel.   One circumstance proves pretty conclusively that the gentlemen assembled did not consider they were acting regularly as a board; the resolution approving of the compromise was not acted on there, but was prepared by Mr.

[Fisher *v.* The Harrisburg Gas Company.]

McCormick to be submitted to and adopted by the board as soon as it would meet, and was formally adopted on the same day, Berghaus being present. It is a settled principle that the assent of every member of a corporation obtained separately is not binding; they can only perform lawful acts when *assembled* (Grant on Corporations, p. 80; Vin. Abr. Corp. G. 30, pl. 6; 8 East, 543; Angell, 504; 2 Sand. N. Y. Ch. R. 186). The assembling must be on due notice, not meeting together by accident, or for a different purpose, unless all the members bepresent.

On the trial I considered, and so instructed the jury, that it mattered not when, where, or how a quorum of the directors got together, and whether notice was given to the absentees or not, their acts would bind the corporation; but where a bare quorum met there must be unanimity, else they could make no binding contract. In this part of the charge the authorities clearly show that the court erred in a manner too favorable for the plaintiff. I was led to the conclusion indicated from the reflection that the law looked rather to substance than to form; and if a majority of the board concurred, they would do so at all times and under all circumstances; therefore, the corporation lost nothing by the absence of a portion of its directors. It is settled in numerous cases that all of the directors are entitled to notice; for, if present, it is presumed that they might by advice, persuasion, etc., induce the others to arrive at a different conclusion. If notified, and they fail to attend, the acts of the majority of a quorum bind.

From what has been already said, we have great doubts as to whether a quorum met in Mr. McCormick's office. The board is to consist of a president and five directors. The president has no negative power over the acts of the directors, is not a separate integral part of the corporation, but one of the board. A quorum consists of four directors. The number, from some cause, in the present case consisted of five in all, including the president. Whether it had never been full, or was reduced by accident, we are unable to say; but the 8th section gives the board power to fill vacancies to hold till the next annual election. What shall form a quorum is not changed by a diminution in the numbers. If four were required to be present when six formed the board, the same number must be in attendance when there are but five directors; and should they be reduced to four, all must be met together to perform any valid act. By reducing the number to three, the corporation is dissolved, at least for all legal action, through its directors (Willcock on Mun. Corp. 63; Angell, 506, 507; 3 Barr. & Adol. 843; 24 Eng. C. L. 174; 4 East, 26; 4 T. R. 823; 6 T. R. 268, 278; 16 Eng. C. L. 139; 7 Cowen, 410, notes).

We have come to the conclusion: 1st. That this was not a lawful meeting of the board for want of notice; 2d. If even a

[Fisher *v.* The Harrisburg Gas Company.]

quorum had so met, it would not in law be considered a *corporate assembly,* but a mere action of the individual directors.  3d. That no quorum met so as to lawfully transact business.  It has, however, been contended that a contract, such as was proved by Messrs. McCormick and Fleming, could be made by the president alone; that he acts as the agent of the board in transacting ordinary business, and his acts are binding.  There can be no doubt at this day that an agent may be employed by a corporation without his authority being conferred by a writing under seal, or by any writing.  Not even a resolution of the board is required.  If he has generally acted for the corporation, and his acts have been recognized; if it has recovered the benefit of his contract; if the president or any director has ordinarily transacted such business, and the acts been approved and sanctioned, it would oblige the corporation to ratify them, else the public might be misled and defrauded.  There is a strong inference in such cases that the agent or officer has full authority.  Here nothing is left to conjecture; the precise power of the officers is proved. No agency is alleged or pretended other than what the law confers.  The president has only the authority of a director, and we had no evidence that he had ever before made or pretended to make a contract.  So conscious was the plaintiff of the necessity of establishing this contract as the act of a board that it was proved the whole three directors met, and that all sanctioned the arrangement.  But it is said that the court erred in instructing the jury that, if Mr. Calder did not know that the plaintiff was acting under a contract, was ignorant that he was sanctioning an alteration in the previous bargain, and did not know what kind of arrangement he was making, it is not binding on the company. It was also argued that as a director he was presumed to know, and bound to know, of the resolution upon the minutes.  There can be no doubt as to the legal presumption of every director knowing what the minutes of the board show; but that presumption may be repelled by proof.  Here Mr. Calder was called by the plaintiff, and clearly proved his want of knowledge on this subject; that he had never known or heard of the resolution of the board which formed the basis of the present contract; *did* not know that he was changing a fixed bargain, or to what he was changing it; *how* much he was agreeing to pay, or what contract he was making for the company.  In such a case it may be well questioned whether an individual could be bound in his own business; still less could he bind those for whom he is acting in a representative capacity.  I think it very clear that in a similar case an executor or administrator would not bind the estate which he represents, and the manager of a corporation could not thus contract for the company.  Moreover Mr. McCormick could not have been injured by anything said or done by Mr. Calder.  It

[Fisher *v.* The Harrisburg Gas Company.]

must be conceded that where one of two innocent persons must suffer, he whose words or silence caused the act, must bear the burden. In this case the plaintiff was not induced to do anything differently, in consequence of what was said in Mr. McCormick's office by the directors. The proposition for a compromise had been made and the terms proposed by the plaintiff in the suit thus pending, before anything was said about a change in the original contract. It cannot be presumed that the counsel gave their clients any different advice relative to the compromise after the change was made in the amount of fees from what they could have done before. No additional labor or trouble was incurred in consequence of what was thus said. Had the counsel thrown any impediment in the way of a compromise, it would have been good ground for their discharge without fee or reward, as it would have been a violation of duty. Our opinion as to the correctness of the charge in this part of the case has not been in the least shaken by the argument. We still consider that if Mr. Calder did not know or understand the contract he was making, the company is not bound by it.

For the reasons already stated we are also satisfied that the charge was correct in deciding that nothing short of the sanction of a quorum of the whole board of directors, met under the circumstances detailed by the plaintiff's witnesses, could bind the corporation; and as we now view the law, even that could not render it a valid contract.

We also had great doubts on the trial whether there was any consideration for the promise in this case, but instructed the jury that they must consider the consideration sufficient.

We are of the opinion now that the charge was too favorable to the plaintiff in that particular.

Mr. McCormick proves that at the time of the conversation in his office the three plaintiffs had proposed to take a judgment for $25,000. He advised the company to give it, and they assented. Is was then stated that the compromise must make no difference in the fees; the counsel must have the same as though the claim was thus reduced by a trial, to which the directors assented. It must be borne in mind that a positive contract existed between the counsel and the company. The former were in duty bound to lend their aid in good faith to effect a compromise, and had done it, with the amount of fees fixed and determined. The terms of the compromise were agreed on, and then the bargain for an increased compensation was made. The consideration was past. The company was receiving nothing, and the counsel rendering no service in consequence of the change. We should have instructed the jury that the promise was without consideration and not binding.

I treated the subject as though the service rendered in making

[*Strohecker v. Buffington.*]

the compromise had been without any contract and the company had promised in consideration of past services to make payment, the counsel were bound to render those services in good faith, effect the compromise if practicable, and receive the compensation agreed on.    They never could lawfully say the case shall not be settled, or we will render no aid in effecting it.    However the corporation may have been bound in honor, it was not bound in law to pay one penny more than was originally agreed on in consequence of the promise proved by Messrs. McCormick and Fleming, and therefore, in no event was the plaintiff entitled to recover more than the amount for which the jury rendered its verdict. If any error exists in the charge, it is in being too favorable for the plaintiff.    The motion for a new trial is therefore overruled.

*Fisher, for plaintiff.*

*Fox, Berryhill, and Briggs, for defendant.*